# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

**VIA ECF** March 5, 2026

Honorable Judge Andrew L. Carter, Jr
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**Re: Hernandez Lopez et al v. 1051 Food Corp. et al; 1:25-cv-02377-ALC**

Dear Judge Carter:

This firm represents all the Plaintiffs in the above-referenced matter. We write in response to your Honor's February 19, 2026 order to show cause why this office and the undersigned should not be disqualified from this matter. Our records indicate that Mr. Pablo Jesus Hernandez Calderon had an intake with one of our paralegals on February 15, 2024. At the time, I was not practicing law, and I resumed the practice of law in April 15, 2025. During this time, the only attorneys that were handling this matter were Mark Marino and Catalina Sojo. However, Ms. Sojo has not been associated with this firm since April 8, 2025, and Mr. Marino has not been associated with this firm since May 29, 2025. Furthermore, Felipe Gomez, the paralegal that did the intake of Mr. Calderon, left the firm on or about February 2024. In addition, our office filed Ms. Sojo's affirmation, which expressly denies any wrongdoing or bad faith misconduct. See **Exhibit A**. At the time of the alleged misconduct, Ms. Sojo was the managing attorney. I am not aware of any information in this matter that necessitates the disqualification of myself and this firm.

**Standard of Review**

Although district courts have discretion to disqualify attorneys, disqualification "is a 'drastic measure' that is viewed with disfavor in this Circuit." *Ritchie v. Gano*, 2008 U.S. Dist. LEXIS 67770, *6, 2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008). "Unless there is a risk of taint to a court proceeding, courts are quite hesitant to disqualify an attorney from representing his client in litigation." *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 306 (S.D.N.Y. 2008).

"Courts are reluctant to grant such motions because they are often tactically motivated . . . and have an immediate adverse effect on the client by separating him from counsel of his choice." *Id.* (quoting *D.R.T., Inc. v. Universal City Studios, Inc.,* 02 Civ. 0958(BSJ)(JCF), 2003 U.S. Dist. LEXIS 6861, 2003 WL 1948798, at *2-3 (S.D.N.Y. Apr. 24, 2003)); *see also Ritchie*, 2008 U.S. Dist. LEXIS 67770, *6 ("The principal reason is that disqualification of counsel impinges on a party's right to employ the counsel of choice").

Additionally, "courts are also reluctant to grant motions to disqualify because they inevitably result in delay and added expense." *Med. Diagnostic Imaging*, 542 F.Supp.2d at 307. Relatedly, "disqualification for violations of ethical rules may impede the pursuit of meritorious litigation to the detriment of the justice system." *United States v. Quest Diagnostics, Inc.*, 734 F.3d 154, 166 (2d Cir. 2013).

For these reasons, the Second Circuit holds that "courts must balance these competing concerns by limiting remedies for ethical violations to those necessary to avoid 'taint[ing] the underlying trial.'" *Id.* (quoting *Bd. of Ed. of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Therefore, "a party seeking disqualification must meet a high standard of proof before the motion may be granted." *Ritchie*, 2008 U.S. Dist. LEXIS 67770, *6-*7. Accordingly, "[t]he Second Circuit has instructed district courts to take a 'restrained approach that focuses primarily on preserving the integrity of the trial process' when deciding disqualification motions." *Id.*, 2008

U.S. Dist. LEXIS 67770, *7 (quoting *Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir. 1980), *vacated on other grounds,* 449 U.S. 1106, 101 S. Ct. 911, 66 L. Ed. 2d 835 (1981)).

As an initial matter, violations of the Model Code, as literally read, should not result in removal of counsel unless the conduct "does . . . violence to . . . the fundamental values which the Canons were written to protect. . . ." *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975); see *McAlpin*, 625 F.2d at 444-45; *Bohack Corp. v. Gulf & Western Indus., Inc*., 607 F.2d 258, 263-64 (2d Cir. 1979); *Board of Educ.* [**9] *v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Freschi v. Grand Coal Venture*, 564 F. Supp. 414, 416-18 (S.D.N.Y. 1983); *Norman Norell, Inc. v. Federated Dept. Stores*, 450 F. Supp. 127, 130-31 (S.D.N.Y. 1978). *Paretti v. Cavalier Label Co*., 722 F. Supp. 985, 988.

**<u>Vicarious Disqualification</u>**

Rule 1.10 of the Model Rules of Professional Conduct states as follows:

> **(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless**
> (1) the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm; or
> **(2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and**
> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and

> (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.
> **(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:**
> **(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and**
> **(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.**
> (c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.
> (d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

<u>See</u> Model Rules of Professional Responsibility 1.10.

Rule 1.6 of the Model Rules of Professional Conduct states as follows:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).
> (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
> (1) to prevent reasonably certain death or substantial bodily harm;
> (2) to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;
> (3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;
> (4) to secure legal advice about the lawyer's compliance with these Rules;
> (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense

> to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;
> (6) to comply with other law or a court order; or
> (7) to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.
> (c) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

See Model Rules of Professional Responsibility 1.6.

For the purposes of this order to show cause, Rule 1.6 is not applicable, as there has been no determined breach of the attorney client privilege. Rule 1.9(c) of the Model Rules of Professional Conduct is relevant, and states as follows:

> **(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:**
> **(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or**
> **(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.**

See Model Rules of Professional Responsibility 1.9(c).

The inquiry at hand is whether this office has material information relating to the brief representation of Mr. Calderon that can be used to the disadvantage of Mr. Calderon. As per Ms. Sojo's Declaration, and a review of our records, the intake of Mr. Calderon was done on February 15, 2024, but upon realizing that he was a potential defendant, we sent two letters, one in English and another in Spanish, informing him that we would not be representing him going forward. Moreover, our office has reviewed our records, and the only information we obtained from Mr.

Calderon is what is reflected in our intake. A review of our intake indicates no information that can materially be used to the disadvantage of Mr. Calderon.

Therefore, for the foregoing reasons, myself and our office should not be disqualified from the representation of the Plaintiffs in this matter.

Respectfully Submitted,

*/s/ Michael Faillace*
Michael Faillace, Esq.
Michael Faillace & Associates, P.C.
*Attorneys for Plaintiffs*