UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

AGUSTIN HERNANDEZ LOPEZ, ANGEL YOVANI HERRERA RIVERA, JEVER VELAZQUEZ CARDOSO, JOSE LUIS VAZQUEZ ANASTACIO, JUAN ANASTACIO MARTINEZ, JUAN LEON MORALES, and ROBERTO VALLADARES HUERTA, *individually and on behalf of others similarly situated*,

Plaintiffs,

-against-

1051 FOOD CORP. (D/B/A KENNEDY FRIED CHICKEN AND PIZZA), 1051 OGDEN LLC (D/B/A KENNEDY FRIED CHICKEN AND PIZZA), JEROME FRIED CHICKEN CORP (D/B/A KENNEDY CHICKEN AND PIZZA), 2487 JEROME LLC (D/B/A KENNEDY CHICKEN AND PIZZA), A&Z FAST FOOD LLC (D/B/A KENNEDY FRIED CHICKEN AND PIZZA), 919 FAST FOOD CORP. (D/B/A KENNEDY CHICKEN & GRILL), 921 FOOD CORP. (D/B/A KENNEDY CHICKEN & GRILL), 921 PIZZA LLC (D/B/A KENNEDY CHICKEN & GRILL), 1956 JEROME LLC (D/B/A KENNEDY CHICKEN AND GRILL), 2475 FOOD LLC (D/B/A KENNEDY CHICKEN AND GRILL), ADBUL KAYUM, NAZIR A YUSUFZAI A.K.A AHMAD, and PABLO HERNANDEZ CALDERON,

Defendants.

---------------------------------------- X

Case No.: 1:25-cv-02377-ALC

# SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DISQUALIFICATION

**DAVIDOFF HUTCHER & CITRON LLP**
Andreas Koutsoudakis, Esq.
Joseph Diego Taylor, Esq.
*Attorneys for Defendants*
1051 FOOD CORP., 1051 OGDEN LLC, JEROME FRIED CHICKEN CORP, 2487 JEROME LLC, A&Z FAST FOOD LLC, 919 FAST FOOD CORP., 921 FOOD CORP., 921 PIZZA LLC, 1956 JEROME LLC, 2475 FOOD LLC, ADBUL KAYUM, and NAZIR A YUSUFZAI A.K.A AHMAD
605 Third Avenue
New York, NY 10158
(646) 428-3113 | jdt@dhclegal.com
(646) 428-3235 | aak@dhclegal.com

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

RELEVANT FACTUAL/PROCEDURAL HISTORY ........ 1

ARGUMENT ........ 2

I. THE COURT SHOULD DISQUALIFY PLAINTIFFS' COUNSEL BECAUSE THE RECORD ESTABLISHES A SAME-MATTER FORMER-CLIENT CONFLICT THAT THREATENS TRIAL TAINT ........ 2

II. PLAINTIFFS FAILED TO CARRY THEIR BURDEN TO AVOID FIRM-WIDE IMPUTATION UNDER RULE 1.10 ........ 3

III. THE SOJO DECLARATION AND MARCH 5 LETTER DO NOT DEFEAT DISQUALIFICATION; THEY CONFIRM IT ........ 4

IV. CALDERON'S CONTINUED INVOLVEMENT WELL AFTER THE ALLEGED TERMINATION DATE MAGNIFIES THE RISK OF PREJUDICE AND SUPPORTS DISQUALIFICATION ........ 5

V. THE FIRM'S OWN LAWYERS AND STAFF ARE LIKELY WITNESSES ON SIGNIFICANT FACT ISSUES, PROVIDING AN INDEPENDENT BASIS FOR DISQUALIFICATION ........ 6

VI. THE APPROPRIATE REMEDY IS DISQUALIFICATION OF MICHAEL FAILLACE AND THE ENTIRE FIRM FROM FURTHER REPRESENTATION IN THIS ACTION ........ 7

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

Page(s)

Cases

*Gov't of India v. Cook Indus., Inc.*,
569 F.2d 737 (2d Cir. 1978) ... 2
*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
409 F.3d 127 (2d Cir. 2005) ... 2, 7
*Murray v. Metro. Life Ins. Co.*,
583 F.3d 173 (2d Cir. 2009) ... 6
*United States v. Prevezon Holdings, Ltd.*,
839 F.3d 227 (2d Cir. 2016) ... 2
*Bd. of Ed. of City of New York v,*
*Nyquist* ... 4, 7
*United States v. ,*
*est Diag* ... 2, 5

Regulations

22 N.Y.C.R.R. 1200.0 Rule 1.10(a) ... 3
22 N.Y.C.R.R. 1200.0 Rule 1.10(b) ... 3
22 N.Y.C.R.R. 1200.0 Rule 3.7(a) ... 6
N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 1.18(a)-(c) ... 3

## PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in support of disqualification of Michael Faillace and Michael Faillace & Associates, P.C. from any further representation of Plaintiffs in this federal action. Plaintiffs' own submissions establish that Pablo Jesus Hernandez Calderon had an intake with the firm, that the firm opened a file for him in this very lawsuit, and that only after obtaining information from him did the firm conclude that he was a potential defendant and send disengagement letters.

That same-matter conflict is enough to trigger the Court's concern with trial taint. Plaintiffs' March 5, 2026 letter and the Sojo declaration do not cure the problem. They do not supply evidence of a timely and effective screen, written notice describing screening procedures, segregation of files, restricted access, or certifications of compliance. Instead, they rely on conclusory assurances, later personnel departures, and a narrative that treats Calderon's role as a brief intake error that ended in February 2024.

The more complete record shows otherwise. The Abdul Kayum declaration states that Calderon remained centrally involved in the creation and prosecution of this case well beyond the date on which Plaintiffs' counsel says it terminated representation, including efforts through at least June 2025 to recruit and pressure putative plaintiffs. That continued involvement reinforces the risk that information obtained from Calderon during intake could be used to his disadvantage in the same litigation. Under the Second Circuit's taint-based disqualification jurisprudence, the New York Rules of Professional Conduct, and the Court's inherent authority to preserve the integrity of the proceedings, disqualification is warranted.

## RELEVANT FACTUAL/PROCEDURAL HISTORY

Moving Defendants respectfully refer the Court to the declaration of Abdul Kayum (See Dkt. 61) and the supplemental declaration dated March 12, 2026.

## ARGUMENT

### I. THE COURT SHOULD DISQUALIFY PLAINTIFFS' COUNSEL BECAUSE THE RECORD ESTABLISHES A SAME-MATTER FORMER-CLIENT CONFLICT THAT THREATENS TRIAL TAINT

Federal courts in this Circuit possess inherent authority to disqualify counsel in order "to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). Although disqualification is a serious remedy and motions seeking it are viewed with caution, the governing inquiry remains whether counsel's continued participation presents a significant risk of taint to the underlying trial. *United States v. Prevezon Holdings, Ltd.*, 839 F.3d 227, 241-42 (2d Cir. 2016)("[D]isqualification is called for only where "an attorney's conduct tends to taint the underlying trial").

Where disqualification is sought based on prior representation, courts in this Circuit ask whether there was a prior attorney-client relationship, whether the present matter is the same as or substantially related to the prior representation, and whether the present client's interests are materially adverse to those of the former client. See *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir. 1978) ("[T]he 'substantial relationship' test in this Circuit in practical application to granting disqualification only upon a showing that the relationship between issues in the prior and present cases is 'patently clear'."); *Hempstead Video, Inc.*, 409 F.3d at 133. Here, Plaintiffs' own submissions satisfy that test. They admit Calderon consulted with the firm about this very case, that the firm opened a file for him, and that only after intake did it recognize that he was adverse to the plaintiffs it would later sue on behalf of. This is not a merely 'substantially related' matter; it is the identical federal action.

Once counsel receives information from a person it has taken in as a client or prospective client in the same matter, the Court need not accept at face value the firm's later assurance that nothing material was learned. The former-client rules exist to prevent the danger that confidential information may be used to the former client's disadvantage and to maintain confidence in the fairness of the proceeding. See *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 168 (2d Cir. 2013) (Upholding disqualification of counsel who "are in a position to use [defendants' confidential information] to give present or subsequent clients an unfair, and unethical, advantage."). Plaintiffs' claim that their intake contains nothing materially harmful is therefore

insufficient, particularly where they have not produced the intake file, notes, conflict-check materials, or access records.

At minimum, Calderon qualifies as a prospective client under Rule 1.18 because he consulted with the firm about the possibility of forming a client-lawyer relationship with respect to this matter. See N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 1.18(a)-(c). Even under that alternative characterization, a lawyer who has received information from a prospective client may not represent a materially adverse party in the same or a substantially related matter if the information could be significantly harmful. *Id*. Plaintiffs' own account of a formal intake, file opening, signing of an engagement letter, and subsequent disengagement easily satisfies the threshold for the Court to find a disabling conflict.

## II. PLAINTIFFS FAILED TO CARRY THEIR BURDEN TO AVOID FIRM-WIDE IMPUTATION UNDER RULE 1.10

The Court's Order to Show Cause expressly required Plaintiffs to address vicarious disqualification. Their March 5 response failed to do so in any meaningful evidentiary way. New York Rule 1.10(a) provides that while lawyers are associated in a firm, none may knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.9, subject to narrow exceptions. See 22 N.Y.C.R.R. 1200.0 Rule 1.10(a). The rule's screening safe harbor is exacting; it requires, among other things, a timely screen, prompt written notice to the affected former client describing the screen, and certifications of compliance. *Id*. Rule 1.10(a)(2).

Plaintiffs' March 5 letter recites the text of Model Rule 1.10, but quotation is not compliance. Plaintiffs submitted no declaration establishing when any screen was imposed, who was screened, whether Calderon's file was segregated, whether electronic or physical access was blocked, whether any written notice described the procedures employed, or whether any certification of compliance was ever provided. On this record, the conflict that arose at intake was imputed to the firm when it arose, and nothing in Plaintiffs' evidentiary submission dispels that imputation.

The effort to rely on later departures of Sojo, Marino, and the  fares no better. Rule 1.10(b) does not retroactively erase firm taint merely because lawyers or staff later leave the organization; the firm remains barred where the same or a substantially related matter is involved and any remaining lawyer has material protected information. See 22 N.Y.C.R.R. 1200.0 Rule 1.10(b).

Plaintiffs offered no competent proof negating that risk. A roster history is not a screen, and a change in personnel does not answer what happened to the Calderon file, who reviewed it, or whether its contents informed subsequent litigation strategy. Especially when current counsel admits to reviewing the file in the March 5 letter.

Nor can Plaintiffs escape imputation by implying that CSM Legal and Michael Faillace & Associates are institutionally distinct. Their own submissions establish the opposite: same office, same matter, same files, and continuity of representation. For imputation purposes, the conflict followed the firm and the case, not the label on the letterhead.

## III. THE SOJO DECLARATION AND MARCH 5 LETTER DO NOT DEFEAT DISQUALIFICATION; THEY CONFIRM IT

The Sojo declaration is framed as an answer to accusations of delay and bad faith. That framing misses the point. Whether the complaint was delayed for innocent or culpable reasons is not the principal issue raised by the Court's OSC. The central issue is whether Plaintiffs' counsel may continue in a case after taking in a co-defendant for representation in the same matter and then switching sides. The Sojo declaration does nothing to negate that core ethical problem.

Indeed, the declaration confirms the critical facts supporting disqualification: Felipe opened a file for Calderon on February 15, 2024; Sojo later discovered the conflict; and the office only then informed Calderon that it would not represent him. Those admissions defeat any attempt to portray the contact as informal, unilateral, or legally insignificant. If anything, they underscore that the conflict was discovered only after confidential communications had already occurred within the firm.

The March 5 letter likewise overstates the significance of general Second Circuit caution against tactical disqualification motions. Nyquist and its progeny teach restraint, but they do not immunize counsel whose conduct threatens taint to the proceeding. See *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (Finding that relevant Second Circuit case law confirms disqualification "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation"); see also *Hempstead Video, Inc.*, 409 F.3d at 133 ("One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client."). Here, Plaintiffs do not merely face an abstract ethics complaint; they face a same-matter

conflict coupled with a failure to prove any effective mechanism that prevented firm-wide transmission or use of Calderon's information.

The letter's assertion that the intake contained nothing materially harmful is especially inadequate. The danger addressed by the former-client rules is not limited to explicit admissions that current counsel now intends to deploy a former client's information. It includes the more subtle and equally serious risk that information about witnesses, operational structure, defenses, chronology, or litigation vulnerabilities may inform strategy against that former client. See *Quest Diagnostics*, 734 F.3d at 166-68. Moreover, the letter acknowledges that current counsel reviewed the provided records regarding this dispute, confirming the retention of those materials despite the obvious conflict. Plaintiffs cannot carry their burden through self-serving characterization of withheld records.

## IV. CALDERON'S CONTINUED INVOLVEMENT WELL AFTER THE ALLEGED TERMINATION DATE MAGNIFIES THE RISK OF PREJUDICE AND SUPPORTS DISQUALIFICATION

A central defect in Plaintiffs' opposition is the attempt to recast Calderon's involvement as a brief intake irregularity that supposedly ended with the February 20, 2024 disengagement letters. The record does not support that characterization. As set forth in Abdul Kayum's declaration, Juan Martinez provided a sworn statement describing Calderon's recruitment of Martinez into this action, Calderon's direction that false information be provided, and Calderon's conduct after Martinez expressed a desire to withdraw. See Kayum Decl., Ex. A. Kayum further attests that Martinez sent him, via Facebook Messenger, an audio recording relating to those events, and Kayum authenticates that recording as Exhibit B.[1] See Kayum Decl. ¶¶ 6-10. Taken together, those materials are irreconcilable with Plaintiffs' effort to portray Calderon as a peripheral figure whose involvement ended long ago. They instead reflect continued involvement in the prosecution of this case and the use of intimidation to preserve plaintiff participation.

That chronology is significant. Plaintiffs ask the Court to view Calderon as a stale intake contact with no continuing relevance after February 2024. But the record, viewed as a whole, points the other way. It places Calderon at the center of events bearing directly on the prosecution

---

[1] Defendants respectfully submit that proposed Exhibit B is an audio recording. Under SDNY ECF Rule 13.3, audio files may not be filed through ECF. Defendants therefore request leave to submit Exhibit B in the traditional manner, or in such manner as the Court directs.

of this action well after the date on which Plaintiffs' counsel claims the relationship ended. That continuing role matters because it confirms Calderon was not some remote or incidental intake subject; he remained intertwined with the operative facts, the plaintiff pool, and the ongoing development of the same federal lawsuit.

This substantially strengthens the case for disqualification. The conflict here was not abstract, historical, or harmless. If Calderon remained involved in recruiting plaintiffs, shaping the factual narrative, and influencing participation in the case while Plaintiffs' counsel continued to prosecute it, then prior communications with him carried continuing tactical significance as the litigation evolved. The more substantial and prolonged Calderon's role, the less tenable Plaintiffs' attempt to minimize the resulting prejudice and the threat to the integrity of these proceedings.

For the same reason, the Court should reject any invitation to dispose of the issue based solely on counsel's assurances that no harm resulted. Where a former or prospective client remains intertwined with the facts, witnesses, and plaintiff recruitment efforts in the very case being litigated, the risk is concrete, not theoretical. The Court should therefore evaluate the conflict against the fuller chronology established by Defendants' evidence, rather than Plaintiffs' truncated February 2024 cutoff narrative.

## V. THE FIRM'S OWN LAWYERS AND STAFF ARE LIKELY WITNESSES ON SIGNIFICANT FACT ISSUES, PROVIDING AN INDEPENDENT BASIS FOR DISQUALIFICATION

New York's advocate-witness rule bars a lawyer from acting as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact, subject to narrow exceptions not present here. See 22 N.Y.C.R.R. 1200.0 Rule 3.7(a). Although courts scrutinize witness-advocate motions carefully to guard against tactical abuse, disqualification is appropriate where the attorney's testimony is likely to be necessary on contested issues and prejudice is substantial. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009).

That standard is satisfied here. Sojo has already submitted a declaration concerning the opening of Calderon's file, discovery of the conflict, the mailing of disengagement letters, the reason for the delayed filing, and the firm's internal handling of the matter. The intake paralegal and any lawyer who subsequently reviewed Calderon's file- including Mr. Faillace- may likewise

possess testimony on disputed issues relating to the scope of the intake, what information was obtained, how it was stored, who accessed it, and whether any screen was ever imposed.

Because those questions go directly to the disqualification dispute and to potential prejudice in the federal action, Plaintiffs' counsel are not merely incidental witnesses. Their testimony bears on the very facts the Court must evaluate to determine whether the conflict infected the litigation. Rule 3.7 therefore reinforces, rather than duplicates, the Rule 1.9 and Rule 1.10 grounds for firm-wide disqualification.

## VI. THE APPROPRIATE REMEDY IS DISQUALIFICATION OF MICHAEL FAILLACE AND THE ENTIRE FIRM FROM FURTHER REPRESENTATION IN THIS ACTION

Federal courts must tailor remedies for ethical violations to avoid taint to the underlying trial. *Board of Ed. of City of New York*, 590 F.2d at 1246; *Hempstead Video, Inc.*, 409 F.3d at 132. Here, a narrower remedy would not suffice. The conflict arose inside the firm during intake in the same matter; Plaintiffs have not shown any timely or effective screen; the record shows institutional continuity between CSM Legal and Michael Faillace & Associates; and the firm's own personnel are likely witnesses concerning the conflict and its consequences.

Under these circumstances, the only adequate remedy is to disqualify Michael Faillace and Michael Faillace & Associates, P.C. from any further representation of Plaintiffs in this federal action, allow time for substitution of new counsel, and grant such further relief as the Court deems just and proper. To the extent the Court desires a fuller evidentiary record before ruling, Defendants should request at minimum in camera submission of the Calderon intake file, related notes, conflict-check records, and any documents purporting to establish a screen. But on the present record, Plaintiffs have already failed to make the showing the Court ordered.

## CONCLUSION

For the foregoing reasons, Defendants should respectfully request that the Court disqualify Michael Faillace and Michael Faillace & Associates, P.C. from any further representation of Plaintiffs in this federal action, direct substitution of conflict-free counsel, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 12, 2026

Respectfully submitted,

**DAVIDOFF HUTCHER & CITRON LLP**

By: ________________________________

Joseph Diego Taylor, Esq.
Andreas Koutsoudakis, Esq.
*Attorneys for Moving Defendants*
605 Third Avenue
New York, NY 10158
(646) 428-3113 | jdt@dhclegal.com
(646) 428-3235 | aak@dhclegal.com